David DEAN, Appellant,

v.

**WES WATKINS AREA VOCATIONAL–
TECHNICAL SCHOOL DISTRICT,
NO. 25, Appellee.**

No. 71465.

Supreme Court of Oklahoma.

Oct. 24, 1989.

Richard A. Mildren, Oklahoma City, for appellant.

Jerry L. Steward, and Donald R. Hackler, Jr., Oklahoma City, for appellee.

KAUGER, Justice.

The dispositive issue presented is whether a challenge to a bond election may be filed after the Attorney General, in his capacity as the ex officio Bond Commissioner of the State of Oklahoma,[1] certifies that the bonds have been issued properly, or if challenges must be filed before the Bond Commissioner approves the issuance of the bonds. We find that bond elections may be challenged pursuant to 62 O.S.1981

1. Title 62 O.S.1981 § 11 provides:
"The Attorney General is hereby made ex officio Bond Commissioner of the State of Oklahoma."
See also, *White v. Pottawatomie County,* 199 Okl. 103, 184 P.2d 446, 448 (1947); *City of Law-* *ton v. West,* 33 Okl. 395, 126 P. 574–75 (1912); *State v. West,* 29 Okl. 503, 118 P. 146–47 (1911); G. Floyd, *The Use of Municipal Bonds in Oklahoma,* Ch. 2, p. 27 (2nd Ed., University of Oklahoma Law Center 1978).

§ 13 [2] within thirty days after the Attorney General acting as Bond Commissioner has certified the bonds, or that under our decisions in *Arthur v. City of Stillwater*, 611 P.2d 637, 639 (Okla.1980) and *Beauchamp v. Oklahoma City*, 477 P.2d 51, 55 (Okla. 1970), *cert denied*, 400 U.S. 917, 91 S.Ct. 175, 27 L.Ed.2d 156 (1970), taxpayers may file an action before approval of the bonds.

## FACTS

Wes Watkins Area Vocational–Technical School District Number 25 (school district/appellee) held an election on April 26, 1988, in Hughes, Okfuskee, and MacIntosh counties to consider a proposal to incur an indebtedness and to issue bonds in the amount of $2,645,000.00. The bond issue passed by a margin of forty-two votes. On May 19, 1988, the Attorney General, acting in his capacity as Bond Commissioner, certified issuance of the bonds.

On June 20, 1988, the appellant, David Dean (Dean), filed suit in all three counties challenging the validity of the bond election. The school district filed a motion to dismiss on June 27, 1988. The three actions were consolidated. The trial court heard the motion to dismiss in Hughes County on June 30, 1988. The trial court sustained the motion to dismiss after finding that challenges to the validity of a bond election must be filed before the Bond Commissioner approves the issuance of the bonds.

BOND ELECTIONS MAY BE CHALLENGED PURSUANT TO 62 O.S.1981 § 13 WITHIN THIRTY DAYS AFTER THE ATTORNEY GENERAL CERTIFIES THAT THE BONDS HAVE BEEN ISSUED IN ACCORDANCE WITH PRESCRIBED METHODS OF PROCEDURE.

■ The school district argues that the general statutes governing election contests, 26 O.S.1981 §§ 8–101–8–122 and the statute governing school board elections, 70 O.S.Supp.1985 § 2–101, control, and that while these statutes provide for election contests by electoral candidates or for school board elections, they are inapplicable to bond elections.[3] The school district bases its argument on the language in 26 O.S.1981 § 8–109,[4] which states that "(c)ontests shall not be permitted in any election except those in which candidates are seeking office" and on 70 O.S.Supp.1985 § 2–101(E),[5] which provides that election contests shall be allowed only in school board elections. Dean asserts that 62 O.S. 1981 § 13 allows bond elections to be contested within thirty days of certification by the Bond Commissioner. We agree.

The school district's argument is untenable for two reasons. First, there is nothing in either of these statutory schemes which indicate that they were intended to

2. Title 62 O.S.1981 § 13 provides:
   "It shall be the duty of the Bond Commissioner to prepare uniform forms and prescribe a method of procedure under the laws of the state in all cases where it is desired to issue public securities or bonds, in any county, township, municipality or political or other subdivisions thereof of the State of Oklahoma; and it shall be the further duty of said Bond Commissioner to examine into and pass upon any security so issued, and such security, when declared by the certificate of said Bond Commissioner to be issued in accordance with the forms of procedure so provided shall be incontestable in any court in the State of Oklahoma unless suit thereon shall be brought in a court having jurisdiction of the same within thirty (30) days from the date of the approval thereof by the Bond Commissioner."

3. Title 70 O.S.1981 §§ 15–101–15–109 govern the procedures that school districts must follow in conducting a school bond election. However,

these statutory provisions do not address contests relating to issuance of the bonds.

4. The school district specifically relies upon 26 O.S.1981 § 8–109 which provides:
   "Any candidate whose name appears on a Primary, Runoff Primary or General Election ballot may, at any time before 5:00 p.m. Friday next following an election, contest the correctness of the announced results of said election by filing a written petition with the appropriate election board. Contests shall not be permitted in any election except those in which candidates are seeking office."

5. Title 70 O.S.Supp.1985 § 2–101(E) provides in pertinent part:
   "... Contests of candidacy for members of the board of education shall be the same as for candidates for county office. Contests of elections shall be allowed only in elections of members of the board of education and shall be the same as for county office."

encompass anything other than the procedures they govern—candidates for representative offices and school board elections. Even if the two sections were generally applicable to bond election contests, they would not be controlling because of the specific statute governing contests related to bond issues, 62 O.S.1981 § 13. It is a special statute which includes the matter in controversy, and which prescribes different rules and procedures from those in the general statutes.[6]

Title 62 O.S.1981 § 13 was enacted to preclude the issuance of illegal bonds. To ensure that an illegality in procedure does not result in the issuance of illegal bonds, the discretionary power to review all bond issue procedures is vested in the Attorney General for the benefit of the public.[7] As Bond Commissioner, the Attorney General must consider whether statutory authority exists for the issuance of the bonds, whether the essential facts exist upon which the exercise of such statutory authority may be conditioned, and whether there has been compliance with the forms and methods of procedure prescribed by the Constitution and statutes. This review includes a determination of the legality of the election proceedings and returns.[8] An illegality in the election process would result in the issuance of illegal bonds. Section 13 provides that after the bonds are properly certified "... they shall be incontestable in any court in the State of Oklahoma unless suit thereon shall be brought in a court having jurisdiction of the same within thirty (30) days from the date of the approval thereof by the Bond Commissioner." Here there are multiple statutory provisions, two general and one special—the special statute governs.

The previous decisions of this Court also vitiate the school district's argument. We have determined that bond elections may be contested: 1) before certification by the Attorney General, acting as ex officio Bond Commissioner;[9] and 2) within thirty days from the date of approval by the Attorney General. We discussed the effect of an earlier decision, *Tettleton v. City of Duncan*, 200 Okl. 631, 198 P.2d 740–41 (1948), on bond election contests in *Beauchamp v. Oklahoma City*, 477 P.2d 51, 55 (Okla.1970), *cert denied*, 400 U.S. 917, 91 S.Ct. 175, 27 L.Ed.2d 156 (1970). The conclusion reached in *Beauchamp* was that: 1) Oklahoma does not have a well-defined period for bringing challenges to general obligation bond elections under the meaning of *City of Phoenix v. Kolodziejski*, 399 U.S. 204, 214, 90 S.Ct. 1990, 1996–97, 26 L.Ed.2d 523, 530–31 (1970);[10] and 2) this Court's affirmation of the trial court in *Tettleton*, a bond election contest brought before the Bond Commissioner certified the questioned bonds, clearly established that an action may be maintained to challenge the legality of a bond election before the Bond Commissioner's performance.

6.  *City of Tulsa v. Smittle*, 702 P.2d 367, 371 (Okla.1985); *Independent School Dist. #1 v. Bd. of County Comm'rs*, 674 P.2d 547, 550 (Okla. 1983); *State ex rel Murphy v. Boudreau*, 653 P.2d 531, 534 (Okla.1982); *Southwestern Bell Tel. Co. v. Oklahoma County Excise Bd.*, 618 P.2d 915, 919 (Okla.1980).

7.  *Rieck v. Town of Longdale*, 389 P.2d 482, 484 (Okla.1964); *White v. Pottawatomie County*, see note 1, 184 P.2d at 449, supra.

8.  *Rieck v. Town of Longdale*, see note 7, supra; *White v. Pottawatomie County*, see note 1, 184 P.2d at 449, supra. See also, L. Rogers, *Oklahoma Municipal Bonds*, Ch. 7, p. 126 (3d Ed., University of Oklahoma Law Center 1987).

9.  *Arthur v. City of Stillwater*, 611 P.2d 637, 639 (Okla.1980); *Beauchamp v. Oklahoma City*, 477 P.2d 51, 55 (Okla.1970), *cert denied*, 400 U.S. 917, 91 S.Ct. 175, 27 L.Ed.2d 156 (1970). See also, *Tettleton v. City of Duncan*, 200 Okl. 631, 198 P.2d 740–41 (1948); *Gilliland v. City of Clinton*, 131 Okl. 186, 268 P. 254 (1928); *Munger v. Town of Watonga*, 106 Okl. 78, 233 P. 211, 213 (1924).

10.  In *Kolodziejski*, the principal issue concerned a challenge to Arizona's constitutional and statutory provisions which limited the right to vote on general election bonds to property owners. The Supreme Court held that there was no adequate reason to restrict the franchise on the issuance of general obligation bonds to property owners. However, because general election bonds had been issued in good faith, the Supreme Court discussed the timeliness of challenging the issuance of such bonds on the basis of the time period in which challenges are allowed by statute.

In *Rieck v. Town of Longdale,* 389 P.2d 482, 484 (Okla.1964), we held that the taxpayer's contest of a bond election was premature. The Court found that the defendants' plea in abatement [11] was proper because suit was filed before the bonds had been issued and approved by the Bond Commissioner. However, the Court also held that the finding of prematurity did not foreclose an action by the taxpayers, because under § 13 suit can be filed within thirty days from the date of the Bond Commissioner's approval.[12] The Court recognized in *Rieck* that taxpayers concerned with the legality of a bond proposal election can wait until the Bond Commissioner has performed the prescribed duties. The rationale for *Rieck* is that the Bond Commissioner's decision may answer the taxpayers' concerns, thus avoiding litigation. The *Rieck* Court said:

> "The statute (62 O.S.1961 § 13) provides that suit may be brought to contest the issuance of such public securities or bonds if brought in a court having jurisdiction of the same within thirty days from the date of approval thereof by the Bond Commissioner."

## CONCLUSION

Taxpayers concerned with the legality of a bond election may bring suit either before the Bond Commissioner approves issuance of the bonds, or within thirty days of the Bond Commissioner's approval. The trial court erred in sustaining the school district's motion to dismiss. The cause is reversed and remanded for a determination on the merits.

REVERSED AND REMANDED.

HODGES, LAVENDER, DOOLIN, ALMA WILSON and SUMMERS, JJ., concur.

OPALA, V.C.J., and SIMMS, J., concur in part, dissent in part.

HARGRAVE, C.J., dissents.

---

11. Pleas in abatement do not dispute the justice of a claim but object to its timing. *State v. Ford,* 189 Okl. 299, 116 P.2d 988, 991 (1941). If abatement is not pled, contests of bond elections may properly be heard before the Bond Commissioner makes a determination as to the legality of the bonds. See, *Arthur v. City of Stillwater,* see note 9, supra; *Beauchamp v. Oklahoma City,* see note 9, supra.

12. See, *City of Sallisaw v. Nesbitt,* 380 P.2d 954, 957 (Okla.1963).